# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| Art Anderson Associates | ) ASBCA Nos. 60034, 60035 |
| | ) |
| Under Contract No. N00033-14-D-8019 | ) |

APPEARANCES FOR THE APPELLANT:    Mr. Nikolas Anderson
    President/CEO
    Mr. Simon Ngu
    Chief Financial Officer

APPEARANCES FOR THE GOVERNMENT:    Ronald J. Borro, Esq.
    Navy Chief Trial Attorney
    Robert M. Elwell, Esq.
    Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE DELMAN

These appeals involve a dispute as to the amounts due and owing Art Anderson Associates (AAA or appellant) related to the convenience termination of its commercial services contract. Appellant elected to prosecute these appeals under Board Rule 12.2 and Rule 11. In accordance with Rule 12.2(c), summary findings of fact and conclusions relevant to quantum are provided below.[1]

*Summary of Background Facts*

1. The Request for Proposals (RFP), a small business set-aside, was issued on or about 18 April 2013 (R4, tab 1). According to the Performance Work Statement (PWS), the scope of work was stated as follows: "In support of the [USS Mount Whitney] this contract will provide non-personal services to the Engineering Directorate of Military Sealift Command (MSC) in the areas of marine engineering, naval architecture, electrical and electronics engineering, maintenance engineering, shipboard testing and inspections and failure analysis" (R4, tab 1 at 7, PWS ¶ 2).

2. On 7 January 2014, the Military Sealift Command (MSC or government) notified AAA it was the low bidder and that the contract would be awarded to AAA on or about 14 January 2014 absent a challenge to appellant's business size status (Anderson decl., ex. 1). On 10 January 2014, Tridentis, LLC (Tridentis), filed a business size protest

---

[1] Pursuant to Board Rule 12.2(d), this decision shall have no value as precedent, and absent fraud, shall be final and conclusive and not subject to appeal.

with the Small Business Administration (SBA). On 13 February 2014, SBA denied the protest. (Anderson and Ngu decls. ¶¶ 7, 9)

3. On or about 25 February 2014, the government awarded this contract to AAA (R4, tab 1). As stated in paragraph 7 of the contract, it is "a firm fixed-price, indefinite delivery-indefinite quantity type Contract with reimbursable elements for actual travel expenses. Under this type of Contract, no work may be performed until directed by Task Order." (R4, tab 1 at 10) The contract also provided a minimum guarantee of $50,000 for supplies or services (*id.* at 6).

4. The contract contained FAR 52.212-4, CONTRACT TERMS AND CONDITIONS— COMMERCIAL ITEMS (FEB 2012). Section (l) in the contract provided as follows:

> (l) Termination for the Government's convenience. The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, **plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination**. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided. [Emphasis added]

(R4, tab 1 at 37)

5. The contracting officer (CO) issued Delivery Order 0001 on 25 February 2014, to fund the government's minimum guarantee of $50,000. The delivery order stated that it provided funding only and was "not an order for services." (R4, tab 2 at 50) The government did not issue any other delivery orders under the contract.

6. The contract required a kick-off meeting to be held within two business days of award (R4, tab 1 at 10). This meeting was scheduled for 4-5 March 2014 (Anderson and Ngu decls. ¶ 11).

7. On 3 March, 2014, Tridentis submitted an agency protest of the award to AAA, alleging, *inter alia*, that the CO had improperly awarded the contract because AAA did not meet the key personnel submission requirements (R4, tab 33). On 4 March 2014, the CO notified AAA of the agency level protest, and issued a stop work order. The kick-off meeting was cancelled. (R4, tab 3 at 51)

8. In an email dated 7 March 2014, the government notified the RFP offerors that it was taking corrective action in response to the agency protest, making certain solicitation changes, re-opening the solicitation and inviting prior offerors to submit revised offers (R4, tabs 30, 31). AAA did not file a protest over this government action. Rather, on 14 March 2014, AAA submitted a revised offer to the government (Anderson decl. ¶ 16, Ngu decl. ¶ 17).

9. By email dated 17 April 2014, MSC provided notice to appellant and the other offerors that the government had awarded the contract to Tridentis (R4, tab 5). AAA did not file a protest over this award. On 20 May 2014, the CO terminated appellant's contract for the government's convenience, and requested that AAA prepare a termination settlement proposal (R4, tab 6).

*Summary of Termination Proposals and Claims*

10. After receipt of the notice of termination dated 20 May 2014, appellant submitted a termination proposal to the government on 23 May 2014, updated on 27 June 2014, seeking $71,334.51 (R4, tabs 7, 9). The CO denied appellant's termination proposal on 8 August 2014, except for the amount of $1,297.27 (R4, tab 10). In response to appellant's objections, the CO reiterated the government's position in writing on 3 September 2014 (R4, tab 12). The parties were at an "impasse," thereby allowing appellant to file a claim.

11. By letter to the CO dated 17 September 2014, appellant submitted a termination claim to the CO and requested a final decision. There was some initial uncertainty as to the amount of this claim. Appellant referenced its "initial proposal," presumably its proposal for $71,334.51, but at the same time reduced the amount claimed in this letter to $44,594.21, reserving the right to file a further claim if this claim was not resolved to its satisfaction. Appellant further confused matters by characterizing its requested settlement amount as an offer "pursuant to F.R.E. 408." (R4, tab 13) Per emails to appellant dated 1 and 3 October 2014, the government characterized appellant's claim amount to be $44,594.21 (R4, tabs 14, 17). Per email dated 3 October 2014, appellant agreed with this characterization, stating: "Sorry for the misunderstanding. After further review we are ok with your letter dated 01OCT14." (R4, tab 17) Hence, the claim as submitted for decision to the CO on 17 September 2014 was in the sum certain amount of $44,594.21.

3

12. As of 24 November 2014, it appears that appellant was willing to accept $34,118.29 as a termination settlement (R4, tab 19); the government offered $10,000 (R4, tab 24). Appellant rejected the counter-offer. Appellant then proposed a lump-sum settlement of $30,000 (R4, tab 25), which was rejected by the government. The government issued a CO final decision (COFD) on 31 March 2015, unilaterally determining the value of the termination claim in the amount of $8,090.38 (R4, tab 26).

13. By letter to the CO dated 14 April 2015, appellant submitted a second termination claim to the CO for decision, in the amount of $71,334.51. This "claim" added additional cost categories and amounts to the termination claim of 17 September 2014. (R4, tab 28) By letter dated 7 May 2015, the government returned the second termination claim to appellant "without action," stating that the matter "has already been fully adjudicated" by the COFD of 31 March 2015 (R4, tab 29).

14. Appellant timely appealed the CO letters of 7 May 2015 and 31 March 2015 to the Board. The Board docketed the appeals as ASBCA Nos. 60034 and 60035.

*Jurisdiction*

The government contends that appellant's claim for $71,334.51, per its letter dated 14 April 2015, did not constitute a valid claim, and hence ASBCA No. 60034 must be dismissed for lack of jurisdiction (answer, affirmative defense no. 1). Appellant contends we should retain jurisdiction of ASBCA No. 60034 but should dismiss ASBCA No. 60035, alleging, *inter alia*, that the parties' subsequent discussion of quantum after appellant's filing of its claim rendered the original sum requested "uncertain" (app. br. at 1).

While appellant identified its letter dated 14 April 2015 as a "claim," appellant's characterization is not controlling as a matter of law. In fact, appellant's "claim" of 14 April 2015 is the same basic claim as the one submitted to the CO for decision on 17 September 2014, i.e., it is a termination claim arising out of the termination of this contract, and only differs in the costs claimed. As such, the Board's conclusion in *Policy Research, Inc.*, ASBCA No. 27168, 83-2 BCA ¶ 16,911 at 84,163 applies here:

> We conclude that appellant's instant claim is the same as that which was previously submitted except for the specific damages sought. Both claims are based upon the same operative facts.... The fact that the specific item of damage that appears in the latter claim was not contained in the former is simply an insufficient basis to warrant treatment of the latter as a different claim.

Because appellant's 14 April 2015 letter was not a different claim the CO was not obligated to issue a final decision, and there was no basis for an appeal. Accordingly, ASBCA No. 60034 is dismissed.

On the other hand, appellant timely appealed the COFD dated 31 March 2015, which denied appellant's original termination claim, in sum certain, dated 17 September 2014. This appeal was docketed as ASBCA No. 60035. "It is well settled that after a claim is filed, the contractor may provide additional data in support of increased damages." *DSP, Inc.*, ASBCA No. 32869, 87-1 BCA ¶ 19,452 at 98,291. In essence, this is what appellant has done here, and as it reserved the right to do in its 17 September claim letter (finding 11).[2] Accordingly, we retain jurisdiction of appellant's termination claim as updated under ASBCA No. 60035.

*Contract Labor Rates*

The CO used "Contract labor rates" to compensate appellant for the reasonable hours expended related to the termination (R4, tab 26 at 210). However, the relevant portion of the termination for convenience clause does not refer to "contract" or to "bid" labor rates,[3] but to "reasonable charges" using the contractor's "standard record keeping system." Such language supports use of appellant's actual, reasonable hourly pay rates contained in its time sheets, and said rates are used herein to fairly compensate appellant for this convenience termination settlement.

*Summary of Compensation for Appellant's Termination Claim*

*Initial Proposal Costs (0)*

Appellant has not shown that these costs are recoverable in a termination settlement. No costs are allowed.

---

[2] The "reservation" in appellant's 17 September 2014 claim did not obviate the sum certain that appellant asserted. *See Zafer Taahhut Insaat ve Ticaret A.S.*, ASBCA No. 56770, 12-1 BCA ¶ 34,951. Nor did subsequent negotiations between the parties obviate that sum certain.

[3] FAR 12.403(d), Termination for the Government's convenience, specifically paragraph (1)(i)(B), does refer to a convenience termination payout based upon "hourly rate(s) in the Schedule," but that regulatory language was added to implement the Services Acquisition Reform Act (SARA) of 2003, which expressly authorized the use of "time and materials" and "labor-hour" contracts for commercial services under certain conditions. *See* FAC No. 2005-15, 71 Fed. Reg. 74667 (12 December 2006). It has not been shown that such a contract was terminated here.

*SBA Size Protest (0)*

This protest was filed by Tridentis prior to the award of appellant's contract. Appellant has not shown that any costs incurred related to such a protest are recoverable in a termination settlement. No costs are allowed.

*Labor: Review Contract ($778.83)*

Appellant is entitled to recover reasonable costs related to the review of the contract prior to the termination. The CO allowed $530, using contract labor rates (*see* above). Appellant seeks $778.83, based upon its time sheets. Appellant has persuaded the Board that its costs are reasonable. Appellant is entitled to recover $778.83.

*Labor: Recruit, Hire and Train ($442.09)*

Appellant is entitled to recover reasonable costs in these categories prior to the termination. Based upon review of appellant's time sheets, and with due consideration to the stop work order issued 4 March 2014, appellant is entitled to recover the following reasonable costs: Hull - $417.34 (14 hours x 29.81); Gatzke - $24.75 (1.5 hours x 16.50), for a total of $442.09.

*Labor: Work Plan, Travel Arrangement, Meeting Preparation ($1,160.76)*

The CO agreed that appellant was entitled to recover the number of hours claimed by appellant in this category for the employees involved. Using appellant's actual hourly pay costs as referenced on its time sheets, it is determined that these reasonable costs are allowable in the amount of $1,160.76 (R4, tab 9 at 71).

*Re-Bid Cost (0)*

Appellant has not shown that re-bid costs are recoverable in a termination settlement. No costs are allowed.

*Termination Settlement Proposal ($3,045.66)*

The undersigned agrees with the government that these costs should not predate 17 April 2014, the date the government advised appellant of the award to Tridentis (finding 9). The government's assessment of hours is reasonable and is accepted as follows: Anderson - 27.5 hours; Ngu - 33.5 hours; Hutchinson - 7.5 hours. Using appellant's actual hourly pay rates, appellant is entitled to recover the following reasonable costs: Anderson $1,322.20 (27.5 hours x 48.08); Ngu $1,558.76 (33.5 hours x 46.53); Hutchinson $164.70 (7.5 hours x 21.96), for a total of $3,045.66.

6

*Legal Expense Related to Termination Proposal ($1,718.11)*

Appellant furnished invoices from counsel for legal expense related to the termination proposal in the amount of $1,718.11 (R4, tab 19 at 192-93). This charge is reasonable. Appellant is entitled to recover $1,718.11.

*Other Costs, Kick-Off Meeting Expense ($687.89)*

The parties agree on the reasonable amounts that appellant incurred for mileage ($104.72); tolls ($4.25); parking ($38.30); and hotel ($540.62). Appellant is entitled to recover $687.89.

*Other Costs, Subcontract ($2,462.65)*

Appellant was billed by its subcontractor, BMT Designers and Planners, Inc., for initial contract start-up action and for its preparation for the kick-off meeting during the period 7 January 2014 through 17 January 2014 (R4, tab 9 at 145). As of 7 January 2014, the government advised appellant that it would be awarded the contract on or about 14 January 2014 absent a challenge to appellant's business size status (finding 2). These subcontract costs were reasonably incurred in anticipation of award and performance, and are allowable. FAR 31.205-32. Appellant is entitled to recover $2,462.65.

*Cost Center Overhead and G&A*

Appellant asserts that it is entitled to Cost Center Overhead (72.11%) and G&A (56.23%) on its termination claim. In support, appellant provides a DCAA memorandum dated 31 October 2012, related to appellant's FY 2011 incurred cost proposal which included the above rates and on which DCAA concluded: "Based on the results of our adequacy evaluation, we consider AAA's FY 2011 incurred cost proposal adequate in accordance with the requirements in FAR 52.216-7" (R4, tab 9 at 146).

Although the DCAA review could support a finding of reasonableness for appellant's FY 2011 rates, it does not follow that this review supports a finding of reasonableness for appellant's rates for **FY 2014**, the period in which this contract was awarded and terminated. Appellant has provided no data for FY 2014, nor has it provided any evidence to illustrate the relative stability of its overhead and G&A rates in recent years. As a small business, appellant's rates may vary significantly from year to year based upon the nature of, and the amount of work performed.

Appellant is entitled to overhead and G&A but appellant has not proven the amounts claimed. Employing a jury verdict, the undersigned reduces appellant's claimed rates by 50%. Cost Center Overhead is allowed in the amount of 36.06%. G&A is allowed in the amount of 28.12%.

7

*Profit*

Appellant seeks 15% profit on its costs, excluding its settlement expenses. Appellant provides no data to support this 15% figure, nor any evidence supporting the reasonableness of such a profit rate on any related contracts. Appellant is entitled to profit, but appellant has not proven the amount claimed. Employing a jury verdict, the undersigned reduces appellant's claimed rate by 50%. Profit is allowable in the amount of 7.5%.

## CONCLUSION

Based upon the foregoing, ASBCA No. 60034 is dismissed. Under ASBCA No. 60035, appellant is entitled to recover $17,877.49, plus CDA interest from the date the CO received appellant's claim of 17 September 2014 to the date of payment. *See* Summary of Costs in the Table attached to this opinion.[4]

Dated: 4 November 2015

JACK DELMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 60034, 60035, Appeals of Art Anderson Associates, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

---

[4] In the Table, discrepancies of a penny are attributable to rounding.

8

# Table: Summary of Costs

| Contract Charges | Direct Cost | Cost Center Overhead | G & A Overhead | Total Cost | Profit | Total |
|---|---|---|---|---|---|---|
| Labor | 2381.68 | 858.83 | 911.23 | 4151.75 | 311.38 | 4463.13 |
| Expenses (kick-off) | 687.89 | 248.05 | 263.19 | 1199.13 | 89.93 | 1289.07 |
| Subcontract | 2462.65 | 888.03 | 942.21 | 4292.89 | 321.97 | 4614.86 |
| Subtotal | 5532.22 | 1994.92 | 2116.63 | 9643.77 | 723.28 | 10367.05 |
| | | | | | | |
| **Settlement Expenses** | | | | | | |
| Proposal Preparation | 3045.66 | 1098.26 | 1165.27 | 5309.20 | 0.00 | 5309.20 |
| Legal & Consulting | 1718.11 | 0.00 | 483.13 | 2201.24 | 0.00 | 2201.24 |
| | | | | | | |
| SubTotal Settlement Expenses | 4763.77 | 1098.26 | 1648.40 | 7510.44 | 0.00 | 7510.44 |
| | | | | | | |
| **TOTAL ALL COST** | **10295.99** | **3093.18** | **3765.04** | **17154.21** | **723.28** | **17877.49** |